PETER S. DICKINSON (SBN 139495)
pdickinson@BushGottlieb.com
KIRK M. PRESTEGARD (SBN 291942)
kprestegard@bushgottlieb.com
BUSH GOTTLIEB
A Law Corporation
801 North Brand Blvd. Suite 950
Glendale, California  91203-3345
Telephone:  (818) 973-3200
Facsimile:   (818) 973-3201

Attorneys for Plaintiffs Directors of the
Motion Picture Industry Pension Plan and
Directors of the Motion Picture Industry
Health Plan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN and DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>IM GLOBAL, LLC, a Delaware Limited Liability Company, and IM PRODUCTIONS, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | **CASE NO.  19-CV-8041**<br><br>**COMPLAINT FOR BREACH OF COLLECTIVE BARGAINING AGREEMENTS AND FOR UNPAID CONTRIBUTIONS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974**<br><br>**[29 U.S.C. § 185; 29 U.S.C. §§ 1132 and 1145]** |

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan ("Plans") allege:

**JURISDICTION AND VENUE**

1.  This action by the Directors of the Motion Picture Industry Pension Plan and Motion Picture Industry Health Plan (collectively, the "Plans") is based on the failure and refusal of Defendants IM Global, LLC and IM Productions, LLC (collectively, "Defendants") to honor their obligations to the Plans, as required by

675773v3  11011-29014

1 the terms of certain collective bargaining agreements and the trust agreements
2 governing the Plans, and pursuant to § 515 of the Employee Retirement Income
3 Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1145, and § 301(a) of the
4 Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

5     2.     This Court has jurisdiction over the subject matter of this action
6 pursuant to 28 U.S.C. § 1331; ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); and
7 LMRA § 301(c), 29 U.S.C. § 185(c).

8     3.     Venue is based on the location of the office in which the Plans are
9 administered, located in the Central District of California.  As such, venue is
10 appropriate pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and LMRA §
11 301(a), 29 U.S.C. § 185(a).

## PARTIES

13     4.     The Plans are "employee benefit plans" within the meaning of ERISA §
14 3(3), 29 U.S.C. § 1002(3), in that they were created pursuant to written declarations
15 of trust ("Trust Agreements") between the International Alliance of Theatrical Stage
16 Employees ("IATSE") and certain other labor organizations, and motion picture and
17 television industry producer employers participating in the Plans ("Producers"), and
18 are maintained for the purpose of providing their participants and beneficiaries with
19 medical, surgical and hospital benefits in the event of sickness, accident, disability
20 or death, and retirement benefits.  The Plans were created and now exist pursuant to
21 LMRA § 302(c), 29 U.S.C. § 186(c).

22     5.     The Plans are "multiemployer plans" within the meaning of ERISA §
23 3(37)(A), 29 U.S.C. § 1002(37)(A), in that more than one employer is required to
24 contribute to the Plans and the Plans are maintained pursuant to collective
25 bargaining agreements between the unions and multiple motion picture and
26 television producers.

27     6.     The Directors are "fiduciaries" within the meaning of ERISA §
28 3(21)(A), 29 U.S.C. § 1002(21)(A), half of whom have been appointed by the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Producers and half of whom have been appointed by the IATSE; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 399; and other applicable labor organizations (collectively, "Unions"). The Directors have an obligation to protect the Plans' assets including ensuring that signatory employers properly remit to the Plans contractually-required pension and health contributions.

7. Under the Trust Agreements, the Directors have control and authority over the Plans, including the authority to file actions such as the present case to protect the Plans' trust assets.

8. At all times relevant herein, the Unions have been labor organizations representing employees in the motion picture and television industry, which is an industry affecting commerce within the meaning of LMRA § 501(1), 29 U.S.C. § 142(1).

9. At all times relevant herein, Defendant IM Productions, LLC ("IM Productions") is and has been a limited liability company organized and existing under the laws of the State of Delaware, registered and transacting business in the State of California, with its principal place of business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, IM Productions is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185.

10. At all times relevant herein, Defendant IM Global, LLC ("IM Global") is and has been a limited liability company organized and existing under the laws of the State of Delaware, registered and transacting business in the State of California, with its principal place of business in the State of California, and is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and LMRA § 501(3), 29 U.S.C. § 142(3). As such, IM Global is also an "employer" as that term is used in LMRA § 301, 29 U.S.C. § 185. The Plans are informed, believe, and thereon allege that IM Global assumed all assets and liabilities of IM Productions.

11. The Plans are informed and believe, and thereon allege that IM Global and IM Productions, are related, co-owned and co-managed entities so as to constitute alter ego and/or single employers of each other, and/or that IM Global is the successor to IM Productions, and are liable jointly and severally for each other's obligations for purposes of federal labor law. IM Global and IM Productions shall be referred to hereafter jointly as "Defendants" or "IM Global."

## COMMON ALLEGATIONS

12. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 11 as though fully set forth herein.

13. The Plans are established and maintained through certain collective bargaining agreements between the Producers and the Unions and the Trust Agreements enacted by the Producers and the Unions. The Producers are represented by the Alliance of Motion Picture and Television Producers, a trade association responsible for negotiating virtually all the industry-wide entertainment union collective bargaining agreements, commonly referred to as the "AMPTP."

14. At all material times, IM Global has been signatory to the IATSE-Producer Basic Agreement, Theatrical and Television Motion Picture Area Standards Agreement, and the Low-Budget Theatrical Agreement (collectively, the "Basic Agreement"), as well as separately-executed Project Agreements, Consent Agreements, and Trust Acceptance agreements pertaining to each Picture, which obligated IM Global to pay contributions to the Plans in the manner and under the terms set forth therein. Collectively, the Basic Agreement, Consent Agreements, Trust Acceptance agreements, and Project Agreements are referred to herein as the "Signatory Documents."

15. The Plans are informed, believe and thereon allege that IM Global has produced and/or distributed motion pictures (the "Films") using single purpose production entities which IM Global owns and/or controls ("Controlled Entities"), and in certain instances, through co-productions with other signatory producers,

which require the payment of pension and health contributions to the Plans. The Films include the following:

| No. | Title |
|---|---|
| 1. | *13 Sins* |
| 2. | *Autopsy of Jane Doe, The* |
| 3. | *Babymakers, The* |
| 4. | *Bullet to the Head, ( aka Headshot)* |
| 5. | *Clive Davis: The Soundtrack of Our Lives* |
| 6. | *Collide (aka Autobahn)* |
| 7. | *Dead man Down* |
| 8. | *Fifty Shades of Black* |
| 9. | *Free Sate of Jones* |
| 10. | *Hacksaw Ridge* |
| 11. | *Haunted House, A  aka Smart Ass* |
| 12. | *Haunted House 2, A  aka Dumb Ass* |
| 13. | *Incarnate* |
| 14. | *Journey, The* |
| 15. | *Money Maker* |
| 16. | *My All American* |
| 17. | *Paranoia* |
| 18. | *Plush* |
| 19. | *Revenge of the Green Dragons* |
| 20. | *Sacrament, The* |
| 21. | *Safe* |
| 22. | *Secret in Their Eyes* |
| 23. | *Southside With You* |

| No. | Title |
|---|---|
| 24. | *Vampire Academy* |
| 25. | *Viral (aka Pest)* |

16. Under ERISA § 515, 29 U.S.C. § 1145, employers such as IM Global that are obligated to make contributions to a multiemployer plan pursuant to one or more collectively bargained agreements, are required to make such contributions in accordance with the terms and conditions of such plan or agreements.

17. Further, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes the Plans to enforce the requirements set forth in ERISA § 515 against IM Global.

18. The Plans are informed and believe, and thereon allege, that IM Global entered written agreements with certain territorial distributors of the Films, pursuant to which those territorial distributors licensed the right to exhibit the Films in certain markets, including but not limited to motion picture theaters ("Theatrical Market"), the free television market, and the "Supplemental Markets" (including, but not limited to, pay television, videocassettes and DVDs).

19. Pursuant to the Signatory Documents, IM Global is obligated to pay contributions to the Plans based upon a percentage of the gross receipts derived from exploitation of the Films in the free television and in the "Supplemental Markets," including, but not limited to, pay television, videocassettes and DVDs ("Residual Contributions").

20. At all times material herein, and pursuant to the Signatory Documents, IM Global has been under an affirmative duty to provide the Directors, their agents and the Plans with information, such as books and records pertaining to exploitation of the Films, so that they can determine whether Residual Contributions, and other contribution obligations, have been paid properly and in the correct amounts.

21. Pursuant to the terms of the Trust Agreements, the Plans have the authority to conduct an audit of the books and records of signatories for the purpose of determining the accuracy of Residuals Contributions made to the Plans. The Trust Agreements provide that if such an audit discloses a delinquency or underpayment, the cost of the audit shall be borne by the signatory who is found to be delinquent, and that if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

22. On or about August 16, 2017, the Plans demanded an audit of the books and records of IM Global for the purpose of determining whether IM Global owed additional Residual Contributions to the Plans for the audit period from inception through March 31, 2017 (the "Audit Period"). Until IM Global permitted the Plans audit access to its complete books and records, the Plans were not able to determine whether and in what amount IM Global owed Residual Contributions to the Plans for the Films during the Audit Period.

23. The Plans are informed and believe, and on that basis allege, IM Global failed to accurately report this information and failed to pay the Residuals Contributions owed the Plans.

24. On or about May 16, 2019, the Plans issued their findings to IM Global, partially liquidating contributions and other costs owed by IM Global in an amount in excess of $3,389,569. A true and correct copy of the letter is attached hereto as Exhibit A.

25. Based on the express terms of the Signatory Documents, the Plans reposed trust and confidence in IM Global and relied on IM Global to accurately report and pay the correct amount of Residual Contributions to the Plans. IM Global's breach of the Signatory Documents, and breach of the trust and confidence the Plans reposed in them, inter alia, serves to toll any statute of limitations, if applicable.

## FIRST CAUSE OF ACTION

### (Violation of ERISA § 515, 29 U.S.C. § 1145)

26. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 25 as though fully set forth herein.

27. The Plans are informed and believe, and thereon allege, that IM Global entered into written agreements with certain territorial distributors ("Distribution Agreements") for the purpose of exhibiting the Films in certain domestic and foreign territories and in markets including but not limited to the Theatrical Market, free television markets, and the Supplemental Markets.

28. The Plans are informed and believe, and thereon allege, that pursuant to these Distribution Agreements, IM Global received payments in the nature of advances and/or minimum guarantees ("Gross Receipts") as consideration for the right to distribute the Films in the markets and for the terms specified in each such Distribution Agreement.

29. At all times relevant hereto, IM Global has been responsible for complying with all terms and conditions of the Signatory Documents with respect to the Films, including but not limited to payment of Residual Contributions, based upon Gross Receipts derived from exploitation of the Films in the free television market and Supplemental Markets, in the proper amounts and when due.

30. The Plans are informed and believe, and on that basis allege, IM Global failed to pay and/or underpaid the proper Residual Contributions due in connection with the Films, in amounts to be determined at trial.

31. By its execution of the Signatory Documents, and in accordance with ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), IM Global agreed that, in the event of a delinquent payment or default in payment, it would be liable to the Plans for liquidated damages equaling either 20% of the total amount of Residual Contributions then due, or interest on the amount then due at the rate of 12%,

commencing 10 business days after notice of the delinqainey through to the date of the judgment, whichever is greater, for each delinquency.

32. The Plans are informed and believe that IM Global owes liquidated damages in connection with exploitation of the Films in an amount to be established by proof at trial.

33. By its execution of the Signatory Documents, and in accordance with ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), IM Global agreed that, in the event of a delinquent payment or default in payment, it would be liable to the Plans for interest on all delinquent contributions at the rate of 1% per month, commencing 10 business days after notice of the delinquency through to the date of the judgment.

34. The Plans are informed and believe that IM Global owes interest in connection with exploitation of the Films in an amount to be established by proof at trial.

35. By its execution of the Signatory Documents, and in accordance with ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), IM Global agreed to be liable for all expenses incurred in the enforcement of the Signatory Documents and/or collection of any and all unpaid contributions, including attorney's fees and costs, accountant's fees, and auditor's fees.

36. The Plans have incurred enforcement and collection costs, including attorney's fees and costs of the Audit, in conjunction with IM Global's failure to make Residual Contributions in connection with exploitation of the Films, in amounts to be established by proof at trial.

### SECOND CAUSE OF ACTION
**(Violation of LMRA § 301(a), 29 U.S.C. § 185(a))**

37. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 36 as though fully set forth herein.

38. IM Global breached the Signatory Documents by failing to pay or by making insufficient payments of Residual Contributions with respect to the Films, per the terms and conditions set forth in each applicable agreement.

39. As a result of IM Global's breach of the Signatory Documents, the Plans have suffered damages in an amount to be established by proof at trial, including but not limited to unpaid and/or underpaid Residual Contributions, liquidated damages, interest, attorneys' fees, legal costs, and audit costs.

## THIRD CAUSE OF ACTION

### ( Alter Ego)

40. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 39 as though fully set forth herein.

41. The Plans are informed, believe, and thereon allege, that at all times, IM Global and IM Production exercised dominion and control over the Controlled Entities, and that the acts, business, and contracts of the Controlled Entities, were and are the acts, business, and contracts of IM Global and IM Production.

42. The Plans are informed, believe, and thereon allege, that at all times, the Controlled Entities operated as business conduits through which IM Global and IM Production engaged in business.

43. The Plans are informed, believe, and thereon allege, that at all times, that the Controlled Entities, IM Global, and IM Production commingled their funds, and treated the assets of the Controlled Entities as IM Global's own, and that in so doing, diverted corporate assets while failing to pay the just debts of the Controlled Entities.

44. The Plans are informed, believe, and thereon allege, that at all times, that there is such a unity of interest and ownership between the Controlled Entities, IM Global, and IM Productions that the individuality and separateness of the Controlled Entities ceased and that adherence to the fiction of IM Global, IM Productions, and the Controlled Entities as separate business entities would be a

deliberate misuse of the corporate form and would, under the circumstances, promote a fraud and injustice.

45. The Plans are informed, believe, and thereon allege, that at all times, through IM Global and IM Production's fraudulent operation and control of the Controlled Entities, IM Global and IM Production are jointly and severally liable to the Plans and are obligated to pay to the Plans all unpaid contributions, interest, liquidated damages, audit costs, legal and attorneys fees as set forth in the Signatory Documents.

## FOURTH CAUSE OF ACTION
### (Violation of ERISA § 415, 29 U.S.C. § 1145 – Unpaid Payroll Contributions

46. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 45 as though fully set forth herein.

47. Pursuant to the Signatory Documents, IM Global and its Controlled Entities are responsible for complying with all terms and conditions of the Basic Agreement and Trust Agreements, including but not limited to the payment of certain monetary contributions to the Plans based upon, with limited exceptions, a set dollar amount for every hour worked or guaranteed for individuals who provided covered services in connection with production of the Films ("Payroll Contributions").

48. The Plans conducted Payroll Contribution compliance reviews of IM Global and certain of its Controlled Entities in connection with production of the Films.

49. On the basis of such compliance reviews, the Plans are informed and believe, and thereon allege, that IM Global has not paid or has underpaid Payroll Contributions due and owing in connection with production of certain Films, in amounts to be established by proof at trial.

50. Pursuant to ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), and the Signatory Documents, in the event of a delinquent payment, IM Global agreed to be

and is liable to the Plans for either the sum of 20% of the total amount of Payroll Contributions then due, or interest on the amount due at the annual rate of 12% on all unpaid Payroll Contributions from the date when payment was due to the date when payment is made, whichever is greater, as liquidated damages for each delinquency. The Plans are informed and believe that IM Global owes liquidated damages in an amount to be established by proof at trial.

51. Pursuant to ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), and the Signatory Documents, in the event of a delinquent payment, IM Global agreed to be and is liable to the Plans for interest at the annual rate of 12% on all unpaid Payroll Contributions from the date when payment was due to the date when payment is made. The Plans are informed and believe that IM Global owes interest in an amount to be established by proof at trial.

52. Pursuant to ERISA § 502(g)(2), 29 U.S.C. §1132(g)(2), and the Signatory Documents, IM Global agreed to be and is liable to the Plans for attorneys' fees and legal costs incurred in connection with collection of unpaid and/or underpaid Payroll Contributions. The amount of such attorneys' fees and legal costs will be established by proof at trial.

53. Pursuant to the Signatory Documents, IM Global agreed to be and is liable to the Plans for the costs of auditing IM Global and the Controlled Entities in connection with the delinquent and unpaid Payroll Contributions, and owes audit costs in amounts to be established by proof at trial.

54. At all times material herein, pursuant to the terms of the Basic Agreement and Trust Agreements, IM Global was under an affirmative duty to pay the Plans the correct amount of Payroll Contributions and to provide the Plans and their agents with information so that they may determine whether Payroll Contributions have been properly paid. The Plans are informed and believe, and on that basis allege, that IM Global failed to accurately report this information and to

pay the proper Payroll Contributions owed in connection with production of the Films.

## FIFTH CAUSE OF ACTION

### (Third Party Beneficiary)

55. The Plans incorporate by reference each allegation contained in Paragraphs 1 through 54 as though fully set forth herein.

56. The Plans are informed, believe, and thereon allege, that pursuant to certain co-production and/or distribution arrangements, IM Global agreed to assume the obligation to pay Residual Contributions in connection with revenue it generated through exploitation of certain Films. The Plans are informed, believe, and thereon allege, that the intent of IM Global and applicable third parties with respect to these agreements was to have IM Global fulfill the contractual obligation to make the Residual Contributions to the Plans as set forth in the Signatory Documents.

57. The Plans are informed and believe, and thereon allege, that the Plans are intended third party beneficiaries of IM Global's agreements with the producers of these certain Films, and that IM Global is therefore liable to the Plans to make Residual Contributions to the Plans with respect to these Films.

58. The Plans are informed and believe, and thereon allege that IM Global breached the Signatory Documents by failing to make any payments of any Residual Contributions to the Plans in connection with certain co-production and/or distribution arrangements, and is obligated to pay to the Plans all unpaid contributions, interest, liquidated damages, audit costs, legal and attorneys fees as set forth in the Signatory Documents.

## PRAYER FOR RELIEF

WHEREFORE, the Plans pray for judgment against Defendants IM Global, LLC, a Delaware Corporation, and IM Productions, a California Limited Liability Company, jointly and severally, as follows:

1. For unpaid Residuals Contributions to the Plans in an amount to be established at trial;

2. For unpaid Payroll Contributions to the Plans in an amount to be established at trial;

3. For liquidated damages in an amount to be established at trial;

4. For interest at the annual rate of twelve percent (12%) on all Residual Contributions and Payroll Contributions from due dates;

5. For reasonable attorneys' fees and costs of this action incurred by the Plans;

6. For costs of the audit in amounts to be proved at trial; and

7. For such additional relief as this Court deems just and proper.

DATED: September 17, 2019

PETER S. DICKINSON
KIRK M. PRESTEGARD
BUSH GOTTLIEB, A Law Corporation

By: _____
PETER S. DICKINSON
Attorneys for Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan

675773v3 11011-29014

14

COMPLAINT FOR BREACH OF A COLLECTIVE BARGAINING AGREEMENT